450 F.2d 413
 78 L.R.R.M. (BNA) 2417, 66 Lab.Cas. P 12,082
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
TRUCK DRIVERS AND HELPERS, LOCAL UNION 676, INTERNATIONAL
BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN
AND HELPERS, Respondent.
 No. 15259.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 15, 1971.
Decided Oct. 4, 1971.
 
 Janet C. McCaa, N.L.R.B., Washington, D. C., for petitioner.
 David Seliger, Camden, N. J., for respondent.
 Before HASTIE, Chief Judge, FREEDMAN,* Circuit Judge, and WEBER, District Judge.
 OPINION OF THE COURT
 HASTIE, Circuit Judge.
 
 
 1
 Underlying the present proceeding, initiated by the National Labor Relations Board to obtain an adjudication in civil contempt against Truck Drivers and Helpers, Local 676, International Brotherhood of Teamsters, is a 1965 decree of this court enjoining the union from engaging in or encouraging employees to engage in secondary boycotting in violation of section 8(b)(4)(B) of the National Labor Relations Act. On March 25, 1969, this court found the union in contempt of our 1965 decree and entered a purgation decree that again enjoined it from secondary boycotting and, in addition, provided as follows:
 
 
 2
 "FURTHER ORDERED that upon the failure of the respondent, its officers, agents, successors and assigns, to comply with any of the purgation provisions hereinabove provided by this order, this Court will deal further with the matter by imposing a fine of $5,000 on the respondent, and an additional fine of $500 per day so long as such non-compliance of this order or of the decree continues, and by such other means as the Court shall determine, including the issuance of body attachment upon any officer or agent responsible for such non-compliance. The fine provisions of this paragraph shall apply for a period of three years from the date of this order, if there are no further violations of this order during such period. This limitation shall not be construed to otherwise affect the duration of this order or of the Court's decree of March 30, 1965, or the Board's power to seek any additional relief from this Court with respect to any future violations of the order or decree."
 
 
 3
 Now, the Board, alleging more recent misconduct in willful violation of our 1969 decree is asking that we assess a $5,500 fine against the union and specify prospective fines in larger amounts to deter future contumacy.[1]
 
 
 4
 Certain facts have been stipulated. In addition, the court has received testimony tendered by the parties on the disputed factual contentions and is now in position to find the relevant facts and to draw appropriate conclusions of law.
 
 
 5
 The charge of contempt is based upon events that occurred in June 1970 at a Salem, New Jersey job site, where a nuclear power generating station was being constructed under the management of United Engineers and Constructors, Inc. United Engineers employed about 1000 persons in various trades on the project. In addition, two other contractors, M. J. Doyle, Inc. and William C. Reppenhagen, Inc. were actively engaged in work at the job site. Each of the three above named employers had a collective bargaining agreement with Teamsters Local 676.
 
 
 6
 It has been stipulated that in June 1970 Fred Powell was the "Chief Union Shop Steward on the Salem, New Jersey project, and as such steward investigated and presented grievances to United Engineers, collected union dues, and transmitted messages and information originating with the union." There were several additional union shop stewards on the project, among them Albert Herman, whose stewardship related to the employees and operations of Contractor Doyle. The President of Local 676 and its principal administrative and executive officer was John P. Greeley. He had authority to call strikes and work stoppages.
 
 
 7
 Trap Rock Industries supplied stone to United Engineers for and at the project. On June 22 and 23, the days of the occurrences now in question, there existed a labor dispute between Local 676 and Trap Rock. No dispute existed between the union and United Engineers, Doyle or Reppenhagen.
 
 
 8
 Early on the morning of June 22, some 24 loaded trucks stood on the access road outside of the sole gate to the project area waiting to deliver crushed stone that had been quarried by Trap Rock.
 
 
 9
 Fred Powell, the chief union shop steward on the Salem project, admitted in his testimony before this court that he prevented these trucks from entering the job site. We also find that during the morning of June 22, Powell threatened Roger Gimbernat, the Assistant Project Superintendent of United Engineers, that, if the trucks delivered the Trap Rock stone all the Teamsters would walk off the job. Powell made the same threat that morning in a conversation at the job site with Donald Spoltore, General Manager of Slade Contracting Co., an enterprise associated with Trap Rock.
 
 
 10
 Later during the morning, John Greeley, President of Local 676, arrived at the job site and engaged in discussions about the problem of Trap Rock deliveries. In a conversation with Stanley Clewett, Project Supreintendent for United Engineers, President Greeley solicited the cooperation of United Engineers in keeping trucks carrying material from Trap Rock away from the project and predicted that otherwise there would be "trouble." Although Greeley refused to state what "trouble" would ensue, the union's answer to this contempt citation admits that Greeley told Clewett that "our people get annoyed about the situation and might walk off the job." In all of the circumstances, we find that Greeley threatened Clewett with a work stoppage by the members of the union employed on the project by neutral employers if Trap Rock deliveries should continue and that Greeley associated himself and the union with that threat.
 
 
 11
 During the afternoon of June 22, union members under the leadership of Powell placed equipment near the gate in position to block trucks from entering. The Trap Rock trucks departed without unloading their stone.
 
 
 12
 On June 23, the union put into effect an area-wide strike against Trap Rock. Throughout that day there was work stoppage by union truck drivers employed by the neutral contractors at the Salem job site, with only two of more than 50 union drivers reporting to work. Two small groups of employees who belonged to the union but were not truck drivers did work. In addition, Powell admitted telling "my drivers" late during the afternoon of June 22: "Well fellows, I am going to take a personal holiday tomorrow, a holiday, and you fellows do what you want to do." He also admitted that the following day he came to the job site, stayed outside the gate and said: "Fellows, I am going home. I am taking a holiday." He did not identify the audience to whom he spoke. Moreover, we find that in a conversation with Samuel Shields, Project Manager for Doyle, on the afternoon of June 22, Albert Herman, the union shop steward for the Doyle operation, predicted that there would be "some sort of sympathy action" and that "we probably would not have any drivers the following day." Powell made a similar prediction.
 
 
 13
 Finally, Powell testified that he was not disciplined by the union for his conduct, but that he was criticized informally for taking too much on himself.
 
 
 14
 We conclude that on June 22 and 23, 1970 the union, acting through its President and the shop stewards on the Salem job site,[2] willfully violated and acted in contempt of this court's purgation order of March 26, 1969, by threatening neutral employers with work stoppages by their employees and subsequently causing such work stoppages in furtherance of its labor dispute with another employer at a time when no labor dispute existed between it and the neutral employers. Because the assessment of a prospective fine of $5,000 for each future act of this kind has proved an inadequate deterrent, it is now appropriate not only that a fine of $5,500 in addition to the costs of this proceeding be assessed for the violations of June 22 and 23, 1970, but also that, as a more substantial deterrent, a prospective fine of $20,000 for each future violation, and an additional $2,000 for each day that the violation shall continue, now be predetermined and announced.
 
 
 15
 An appropriate decree may be submitted.
 
 
 
 *
 Judge Freedman heard the argument of this matter but died before decision was reached
 
 
 [1]
 All relevant proceedings and orders from the original 1965 decree to the present contempt citation are filed at our No. 15,259
 
 
 [2]
 On the facts of this case the union is legally chargeable with the willful misconduct of the union shop stewards. Cf. N.L.R.B. v. Brewery & Beer Distributors Drivers, 3d Cir. 1960, 281 F.2d 319, 321-22; N.L.R.B. v. Local 825, Int'l Union of Operating Engineers, 3d Cir. 1970, 430 F.2d 1225, 1228; Local 349, I.B.E.W. v. N.L.R.B., 1965, 123 U.S.App.D.C. 119, 357 F.2d 579, 580; N.L.R.B. v. Int'l Brotherhood of Boilermakers, 8th Cir. 1963, 321 F.2d 807, 810