**UNITED ENGINEERS AND CONSTRUCTORS, INC., a Delaware corporation authorized to do business in the State of New Jersey, and William C. Reppenhagen, Inc., a New Jersey corporation, Plaintiffs,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN, AND HELPERS OF AMERICA, and Teamsters Local 676, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, Defendants.**

Civ. No. 895–70.

United States District Court,
D. New Jersey.

Sept. 17, 1973.

Appruzzese & McDermott by Francis A. Mastro, Springfield, N. J., for plaintiffs.

Tomar, Parks, Seliger, Simonoff & Adourian, by Howard S. Simonoff, Camden, N. J., for defendants.

## OPINION

COHEN, Chief Judge:

Plaintiffs, United Engineers & Constructors, Inc. and William C. Reppenhagen, Inc., instituted the present action pursuant to § 303 [1] of the National Labor Relations Act (NLRA), 29 U.S.C. § 187, seeking damages from the defendants, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and Teamsters Local 676 (Union) for activity allegedly in violation of § 8(b)(4)(B)[2] of the NLRA, 29 U.S.C. § 158(b)(4)(B), relating to secondary boycotts. Before the court is a motion by the plaintiffs for partial summary judgment on Count II of the complaint pursuant to Rule 56(a), Fed.R.Civ.P.

The facts of the present controversy are as follows:

Plaintiff contractors are constructing a Nuclear Generating Station in Salem, New Jersey, for the Public Service Electric and Gas Company. A work stoppage, arising out of a labor dispute between the defendants and Trap Rock Industries, occurred on June 22nd and 23rd, 1970.

In addition to the institution of the instant damage action, plaintiffs filed an unfair labor practice charge with the National Labor Relations Board (NLRB) contending that the Union had engaged in a secondary boycott in violation of § 8(b)(4)(B) of the NLRA. The NLRB found for the complainants in the administrative proceeding. Subsequently, the NLRB requested the Third Circuit Court of Appeals to hold the Union in contempt of an outstanding purgation order issued in 1965 which prohibited the defendants from engaging in precisely the same activity.

A hearing was conducted on January 15, 1971, in which both sides (the NLRB and the Union) produced extensive testimony. The Union was held in contempt for the work stoppages of June 22nd and 23rd, 1970 which, the court concluded,

1. Section 303 of the NLRA, 29 U.S.C. § 187, provides in pertinent part:

(a) It shall be unlawful . . . for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of this title.

(b) Whoever shall be injured in his business or property by reason of any violation of subsection (a) of this section may sue therefor in any district court of the United States . . . and shall recover the damages by him sustained and the cost of the suit.

2. Section 8(b)(4)(B) of the National Labor Relations Act, 29 U.S.C. § 158(b)(4)(i)(B) notes that:

(b) It shall be an unfair labor practice for a labor organization or its agents—

\* \* \* \* \*

(4)(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage, in a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in any industry affecting commerce, where in either case an object thereof is—

\* \* \* \* \*

(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: *Provided,* That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing . . . .

constituted a secondary boycott, as well as a willful violation of the outstanding purgation order. NLRB v. Truck Drivers & Helpers, Local Union 676, 450 F. 2d 413, 415 (3d Cir. 1971).

The sole issue presented here is whether the doctrine of collateral estoppel prevents the relitigation of issues determined in the Court of Appeals action.

Plaintiffs contend that the application of collateral estoppel is particularly appropriate in this case in that the facts of the instant action have previously been determined in a judicial proceeding rather than by an administrative board.[3] Defendants, on the other hand, argue that damage suits under § 303 are totally independent of any unfair labor practice action held before the NLRB. The Union contends that Congress intended to create parallel administrative and judicial remedies for certain conduct, despite the possibility of achieving conflicting results.

It should be noted that the context in which similar cases have arisen is the attempt by one side to apply the doctrine of res judicata to the administrative findings of the NLRB. There is a split of authority on the question, with the majority favoring application of the doctrine.[4]

■ The appropriate standard for determining when res judicata should be applied to an administrative proceeding was established by the United States Supreme Court in United States v. Utah Construction and Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed. 2d 642 (1966).

When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.

Thus, the nature of the proceeding must be closely scrutinized to determine the applicability of res judicata.[5] The process by which the factual determinations are made must comport with standards of procedural and substantive due process. Paramount Transport Systems v. Teamsters Local 150, 436 F.2d 1064, 1065–66 (9th Cir. 1971).

■ Similar principles apply to a judgment rendered by a court. Collateral estoppel by judgment is applicable when some question of law or fact has been judicially and finally determined by a court of competent jurisdiction. Such a judgment is binding upon the parties or their privies in a subsequent action even though it involves a different claim or demand. Lawlor v. Nat'l Screen Service, 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955). See also J. Moore, 1 B Federal Practice § 0.441[2] (2d ed. 1965).

■ The determination of this court is that there has been a prior judicial decree which estops defendants from relitigating the factual issues decided therein. As was concluded in that prior decree

the union, acting through its President and the shop stewards . . . willfully violated [§ 8(b)(4)(B)] . . . by threatening neutral em-

3. See, infra note 4.

4. Nix v. Fulton Lodge No. 2, 452 F.2d 794 (5th Cir. 1971); Paramount Transport Systems v. Chauffeurs, Teamsters and Helpers, Local 150, 436 F.2d 1064 (9th Cir. 1971); H. L. Robertson & Associates, Inc. v. Plumbers Local Union No. 519, 429 F.2d 520 (5th Cir. 1970); and Painters District Council No. 38 v. Edgewood Contracting Co., 416 F.2d 1081 (5th Cir. 1969). Contra, Riverton Coal Co. v. U. M. W., 453 F.2d 1035 (6th Cir. 1972) and Dairy Employees Local Union No. 584, 359 F.2d 598 (2d Cir. 1966).

5. It should be noted that the case sub judice is clearly distinguishable from the decision of this court in Shell Chemical Co. v. Teamsters Local Union No. 676, 353 F.Supp. 480 (D.N.J.1973). There the court refused to apply the doctrine of res judicata in a § 303 damage action to a previous determination of a hearing officer that there was no § 8(b)(7)(C) violation. In Shell the proceeding before the hearing officer was characterized as a non-adversary, non-judicial proceeding. Contrastingly, in the present case the facts in issue were determined at a judicial proceeding.

ployers with work stoppages by their employees and subsequently causing such work stoppages in furtherance of its labor dispute with another employer at a time when no labor dispute existed between it and the neutral employers. 450 F.2d at 415.

Defendants do not allege that these findings were made in a non-judicial proceeding or contrary to traditional notions of due process; defendants had ample opportunity to litigate the factual issues raised by Count II of plaintiffs' complaint. These issues were decided adversely to defendants and this court sees no reason to relitigate them.

Accordingly, defendants are estopped from relitigating the prior determination that they engaged in a secondary boycott.

Plaintiffs' motion for summary judgment on Count II is hereby granted.