KIPBEA BAKING CO., Inc., Plaintiff,

v.

John STRAUSS, individually and as President, Robert J. Sullivan, individually and as Secretary-Treasurer, of Bakery Drivers Union Local 802, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and Frank Dutto, individually and as President, and Harry Rubenstein, individually and as Treasurer of Local 3, Bakery and Confectionery, Workers' International Union of America, Defendants.

No. 63–C–294.

United States District Court
E. D. New York.

June 27, 1963.

Benjamin Machinist, New York City, for plaintiff.

Cohen & Weiss, New York City, Bruce H. Simon, New York City, of counsel, for defendants John Strauss, Robert J. Sullivan and Bakery Drivers Local 802, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

Cooper, Ostrin, DeVarco & Ackerman, New York City, Herbert J. DeVarco, Harold L. Young, New York City, of counsel, for defendants Frank Dutto, Harry Rubenstein, and Local 3, Bakery and Confectionery Workers' International Union of America.

BARTELS, District Judge.

Plaintiff, as employer, sues two unions, defendant Local 802, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Local 802), and defendant Local 3, Bakery and Confectionery Workers' International Union of America (Local 3), under Section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C.A. § 185 (the Act), for $250,000 damages arising out of alleged breaches of collective bargaining agreements.

The unions move to dismiss the action under Rule 12(b) (1) and Rule 12(b) (6), Fed.Rules Civ.Proc., 28 U.S.C.A., or, in the alternative, for summary judgment under Rule 56(b), on the grounds that (i) the determination in a prior action in the Supreme Court of the State of New York was *res judicata*, and (ii) the complaint does not state a breach of contract claim or, in the alternative, to stay the action because the alleged collective bargaining agreements require that all disputes be submitted to arbitration.

The complaint, although unnecessarily verbose, in substance, states the following: Plaintiff, incorporated in 1956, doing business of baking, selling and distributing pies in Bronx, New York, entered into collective bargaining agreements with Local 3, covering its bakers, and with Local 802, covering its drivers. These agreements were in existence in April, 1959, when the plaintiff decided to discontinue its baking business and to limit its activities to distribution of pies and cakes. Accordingly, it notified the members of Local 3 and made all payments due them prior to June 30, 1959, for vacations, sick pay and wages. Plaintiff then moved on July 3, 1959, to 147 Plaza Avenue, Mamaroneck, New York, and on the same date a relative of the plaintiff's president and a former employee of the plaintiff opened up a wholesale pie baking business under the name of H. & L. Baking Co. (H. & L.) at the same address. But H. & L. refused to enter into a collective bargaining agreement with Local 3. Thereafter Local 3 picketed in front of plaintiff's new location as well as its former location in the Bronx, carrying signs stating that "H & L Baking Company (Kipbea Baking Co.) Workers LOCKED OUT". Al-

though plaintiff notified Local 802 that it was no longer in the baking business, Local 802 on July 2, 1959, gave plaintiff 24 hours' notice that it would not cross the picket line of Local 3 "if the strike is still in progress at that time", in accordance with the terms of the collective bargaining agreement.

Local 802 then committed various acts harmful to the plaintiff's business, including the transfer of drivers from plaintiff's employ to a competitor's employ in order to deliver said competitor's pies to plaintiff's customers under false representations, which conduct and statement were alleged in paragraph 31st of the complaint to be "in breach of defendant's contracts with plaintiff." In addition, Local 3 picketed plaintiff's premises and both locals conducted secondary boycott activities against plaintiff's suppliers and customers. All of this, the plaintiff states in paragraph 53rd, was carried out in furtherance of a conspiracy between the two locals "to compel plaintiff to induce said H. & L. Baking Co. Inc. to recognize and deal with defendant Union Local 3, in violation of the constitutional and statutory rights of the said corporation and its employees, and in violation of law in such cases made and provided, all in breach of their contracts with the plaintiff herein." The last allegation and the allegation in paragraph 31st were the only allegations of any breach of contract. The above is a paraphrased account of the statements in the complaint.

From the motion papers it appears that in or about October, 1959, the plaintiff and H. & L. instituted actions in the New York State Supreme Court against the defendants, which on April 3, 1961, were dismissed on the ground that the NLRB had exclusive jurisdiction over the subject matter of the actions. The complaint in the State court indicates clearly that it was an action primarily for a permanent injunction to restrain the defendants from dealing with the plaintiff's customers and interfering with its business, although it did seek incidentally to recover present and future damages to be assessed by the court. A comparison of that complaint with the complaint in the instant action reveals that, for all intents and purposes, they set forth the same operative facts except that the State complaint joined Stevenson Pie Co., Inc. as a party to an alleged conspiracy, and the present complaint adds a reference to the proceedings by the NLRB against Local 802 and the proceedings by the NLRB against the plaintiff on charges of Local 3. In addition to these charges, the motion papers reveal that plaintiff also filed charges with the NLRB against Local 3. The NLRB dismissed the complaint against the plaintiff issued on Local 3's charges and the Regional Director also refused to issue a complaint against Local 3. However, following a stipulation of settlement with Local 802, the NLRB handed down a final decision and order against Local 802.

## I

The defendants insist that the judgment in the State court is *res judicata* and is a bar to the present action. The dismissal of the State court complaint was on the ground of lack of jurisdiction and not upon the merits. It was conclusive, therefore, only as to the point expressly decided. See Griffith v. Bank of New York, 2 Cir., 147 F.2d 899, 903, 160 A.L.R. 1340, cert. denied, 1945, 325 U.S. 874, 65 S.Ct. 1414, 89 L.Ed. 1992. It is true that the principles of *res judicata* are applicable to questions of jurisdiction and are no less applicable to a decision denying jurisdiction than to one sustaining jurisdiction. See American Surety Co. v. Baldwin, 1932, 287 U.S. 156, 166, 53 S.Ct. 98, 77 L.Ed. 231, and Ripperger v. A. C. Allyn & Co., 2 Cir., 113 F.2d 332, cert. denied, 1940, 311 U.S. 695, 61 S.Ct. 136, 85 L.Ed. 450. When so applied, the principle is limited to the court whose jurisdiction has been denied. Thus if the jurisdiction of this Court were invoked on the ground of diversity for the purpose of enforcing State law and State policy, the decision of the State court would be binding upon this Court. See Angel v. Bullington,

1947, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832. But this does not signify that the State court may sterilize the jurisdiction of the Federal court in an action based upon a claim under a Federal statute since the assertion of a Federal right may not be defeated by a talismanic label of "no jurisdiction". In reality, therefore, there was no adjudication in the State court upon the merits which was relevant in the application of the principle of res judicata. "And it is well settled that state statutes cannot limit the jurisdiction or restrict the procedure of the federal courts, although they may at times provide plaintiffs with additional remedies which will be enforced in the federal courts." Griffith v. Bank of New York, supra, p. 904 of 147 F.2d. For example, a dismissal of a petition in the State court for lack of jurisdiction over the subject matter was not res judicata in a similar proceeding in a Federal court of bankruptcy. Detroit Trust Co. v. Dunitz, 6 Cir., 1932, 59 F.2d 905; cf., Southern Pacific Co. v. Bogert, 1919, 250 U.S. 483, 39 S.Ct. 533, 63 L.Ed. 1099. Resort here is not upon the basis of diversity of citizenship, but under Section 301 of the Act which creates a Federal right for breach of contract. Consequently, the State court's decision based upon juridiction is no bar to the present suit. Cf., Holmberg v. Armbrecht, 1946, 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743. "If a judgment of dismissal is rendered on jurisdictional grounds, the losing party may accept it; and, instead of seeking a review, may institute another action where one will not be met by the jurisdictional bar." Illinois Central Railroad Co. v. Mississippi Public Service Comm., S.D.Miss.1955, 135 F.Supp. 304, 306.

The principle of res judicata is also inapplicable because the remedy sought in each action is different. The suit in the State court was for an injunction in equity with damages incidental thereto. The complaint was not predicated upon damages flowing from a breach of contract but was framed upon the theory of irreparable injury, past and future, resulting from allegedly illegal conduct. The action in this Court does not involve the same issue. Here the suit is at law, seeking money damages for a breach of contract. A dismissal of the State court action under these circumstances only decided that the court had no jurisdiction to grant injunctive relief which could not be res judicata of the issues here raised. Wells Truckways, Ltd. v. Burch, 10 Cir. 1957, 247 F.2d 194; cf., Restatement, Judgments, § 65(2).

## II

Defendants claim that the NLRB has exclusive jurisdiction of the acts complained of since they fall within the category of unfair labor practices, and that accordingly the complaint must be dismissed. The recent cases do not support this contention. The same acts may constitute unfair labor practices and also violations of collective bargaining agreements entitling the plaintiff to institute an action under Section 301. The fact that the Board also has jurisdiction to deal with such unfair labor practices, does not make that jurisdiction exclusive nor destroy the jurisdiction of the courts to hear contract violations under Section 301. See Smith v. Evening News Ass'n, 1963, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed. 2d 246; Sovern, Primary Jurisdiction, 76 Harv.L.Rev. 529 (1963).[1]

## III

It is further argued that an examination of the acts charged in the complaint discloses no breach by the defendants of their collective bargaining agreements. This is true. Other than the conclusory allegations of breach of contract referred to in paragraphs 31st and 53rd of the complaint, there is no allegation of facts which describes a contract violation by the defendants. The acts charged against both unions might have violated

---

1. Similarly, there is no such pre-emptive jurisdiction with respect to § 303 suits. See Local 100 of United Ass'n of Journeymen and Apprentices v. Borden, 1963, 373 U.S. 690, 83 S.Ct. 1423, 1425, 10 L. Ed.2d 638, n. 3.

the National Labor Relations Act but they are not acts which can be characterized as breaches of contract. See Oil, Chemical and Atomic Workers International Union, etc. v. Delta Refining Co., 6 Cir. 1960, 277 F.2d 694.[2] The factual reference which is made to the contract shows compliance with the contract, at least with respect to Local 802. Paragraph 9th of the complaint alleges that the contract between plaintiff and Local 802 provided that in the event of a strike by any union affiliated with AFL-CIO, the employees reserve the right to refuse to cross the picket line and such action would not be a breach of contract provided that notice was given. Plaintiff then alleges that the required notice was given by Local 802. Thus by the very allegations of the complaint, the refusal by Local 802 to work after Local 3 posted a picket line cannot be considered a breach of contract. With respect to Local 3, there are no allegations as to what provisions of the contract were breached by it and in fact, the union contends that the complaint indicates that the contract was terminated by the employer when it discontinued its baking business.[3] Consequently, the plaintiff has failed to spell out a claim under Section 301 of the Act and its complaint in this regard is fatally defective.

## IV

The facts set forth in the complaint, however, do describe second-ary boycott activities and other acts which are expressly prohibited by Section 8(b) (4) of the Act. Apparently defendants admit that the acts charged would be such a violation since the character of these acts was the basis of their thesis that the NLRB had exclusive jurisdiction of this suit. The coordinate section of the Act expressly authorizing suits for the recovery of injuries sustained by such prohibited acts, is Section 303 of the Act.[4] A Section 303 suit is not dependent upon a prior administrative determination by the Board that an unfair labor practice has been committed by either the employer or the union. See International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp., 1951, 342 U.S. 237, 72 S.Ct. 235, 96 L.Ed. 275. Since the two actions are independent, it is apparently of no consequence that a decision reached by the Board in one case is inconsistent with the decision reached by the court in the other case.[5] Here the facts alleged sound in tort and not in contract. In such a case not only may a Section 303 suit be instituted but to such an action there may be also joined a non-federal common law tort claim. Flame Coal Company v. United Mine Workers, 6 Cir. 1962, 303 F.2d 39, cert. denied, 1963, 371 U.S. 891, 83 S.Ct. 186, 9 L.Ed.2d 125. The fact that plaintiff failed to properly plead jurisdiction will not deprive the Court of such jurisdiction if the defect is later remedied, Walters v. Boyd, S.D.Tex.

2. The forms of simplified pleading in the Appendix to the Rules do not suggest that an allegation that the terms of the contract for the breach of which suit is instituted, may be omitted. Id. at 697 n. 3.

3. Since plaintiff has failed to allege any specific breach of contract, it is unnecessary to consider whether the contract was terminated or if not, whether the controversy is subject to arbitration.

4. Section 303(b) provides that "Whoever shall be injured in his business or property by reason of any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 301 hereof without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit." Subsection (a) provides "It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 8(b) (4) of the National Labor Relations Act as amended."

5. Compare N. L. R. B. v. Deena Artware, Inc., 6 Cir. 1952, 198 F.2d 645, cert. denied, 345 U.S. 906, 73 S.Ct. 644, 97 L. Ed. 1342 (1953), with United Brick and Clay Workers v. Deena Artware, Inc., 6 Cir. 1952, 198 F.2d 637, cert. denied, 344 U.S. 897, 73 S.Ct. 277, 97 L.Ed. 694 (1952).

1960, 187 F.Supp. 479, 481; 28 U.S.C.A. § 1653.[6] Accordingly, the Court will dismiss the present complaint with leave to amend the same to allege jurisdiction under Section 303 of the Act.

Settle order within ten (10) days on two (2) days' notice.

---

**6.** See Burris v. International Brotherhood of Teamsters, etc., W.D.N.C.1963, 216 F.Supp. 38 (suit by union member against union under § 301 dismissed for failing to show breach of contract with leave to amend to show violation of the Labor-Management Reporting and Disclosure Act of 1959 (Landrum-Griffin Act), 73 Stat. 519).