**SHELL CHEMICAL COMPANY, a DIVISION OF SHELL OIL COMPANY, a corporation, Plaintiff,**

v.

**TEAMSTERS LOCAL UNION NO. 676, Defendant.**

Civ. A. No. 200–72.

United States District Court,
D. New Jersey.

Feb. 2, 1973.

As Amended Feb. 13, 1973.

Apruzzese & McDermott, by Francis A. Mastro, Springfield, N. J., for plaintiff.

Tomar, Parks, Seliger, Simonoff & Adourian, by Robert F. O'Brien, Camden, N. J., for defendant.

## OPINION

COHEN, District Judge:

■ The sole issue presented upon the defendant-Union's motion for summary judgment, in this Labor-Management Relations case, is whether the determination of the National Labor Relations Board, relative to a Section 8(b)(4)(D) jurisdictional dispute 29 U.S.C. § 158(b)(4)(D) [1] is *res judicata* as to the Union's liability for damages in a subsequent suit by Management, pursuant to Section 303 of the National Labor Relations Act (29 U.S.C. § 187).[2]

---

[1]. 29 U.S.C. § 158(b)(4)(D):
"(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work. . . ."

[2]. Section 303 (29 U.S.C. § 187):
"Sec. 303. (a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of this title.

"(b) Whoever shall be injured in his business or property by reason [of] any violation of subsection (a) of this section may sue therefore in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit."

A recitation of the pertinent facts is appropriate. Catalytic Construction Co., among others, has for more than 10 years performed maintenance services for the plaintiff, Shell Chemical Company. Additionally, Shell maintained its own service department. Catalytic was and is a party to a collective bargaining agreement with the defendant, Teamsters Local Union No. 676; Shell is not. On or about December 9th, 1971, one William Pollinger, an employee of Catalytic and a member of the defendant-Union, together with 9 other employees was laid off from work because of a cutback in operations by Catalytic. Thereafter, the Union demanded employment of Pollinger by Shell and in support thereof a picket line was established at Shell's West Deptford, New Jersey plant on January 20th, 1972 which continued until February 11th, 1972.

In its charge before the Board, as well as in its challenged complaint here, Shell alleges that the Union's picketing was designed to, and in fact did, induce employees of other employers to cease picking up, or delivering materials at Shell's plant, or to perform any services there. In an attempt to isolate the dispute, inasmuch as Pollinger—Catalytic's employee, not Shell's—was laid off by Catalytic, Shell designated one gate for the exclusive use of Catalytic employees and suppliers and another for the exclusive use of Shell employees and suppliers. Appropriate signs were posted by Shell at both gates indicating their designation and reservation and the Union was advised thereof by telegram. Nevertheless, the picketing initially conducted at both gates continued at the one reserved exclusively for Shell employees and suppliers. It was established before the Board that Shell had no control over Catalytic's labor relations or personnel.

As a result of the Union's activity, unfair labor practice charges were filed by Shell with the Board alleging violations of the Act, namely, Sections 8(b)(4)(B), 29 U.S.C. § 158(b)(4)(B),[3] secondary boycott, 8(b)(4)(D)[4], unlawful jurisdictional dispute picketing, and 8(b)(7)(C) (29 U.S.C. § 158(b)(7)(C)[5], recognitional picketing. The charge alleging a violation of Section 8(b)(4)(B), secondary boycott, was ultimately withdrawn, without a determination by the Board. Comment thereupon will be made later in this opinion.

3. 29 U.S.C. § 158(b)(4)(B):
"(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: Provided, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing."

4. *Supra* note 1.

5. 29 U.S.C. § 158(b)(7)(C):
"(C) where such picketing has been conducted without a petition under section 159(c) of this title being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: Provided, That when such a petition has been filed the Board shall forthwith, without regard to the provisions of section 159(c)(1) of this title or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof: Provided further, That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services.

Nothing in this paragraph (7) shall be construed to permit any act which would otherwise be an unfair labor practice under this subsection."

The remaining two charges were the subject of a complaint issued by the Board against the Union.

Upon application by the Board to the United States District Court for the District of New Jersey, Judge John J. Kitchen presiding, an injunction pursuant to Section 10($l$) was granted, the Court finding reasonable cause to believe that the Union was engaged in unlawful recognitional picketing as well as in conduct in furtherance of an unlawful jurisdictional dispute objective.

To be noted is that Shell was not a party to the injunction proceedings, the Union objecting to Shell's appearance on the record.

After the grant of the injunction, a hearing was conducted by the Board, pursuant to 10(k) of the Act (29 U.S.C. § 160(k) [6], on the Section 8(b)(4)(D) charge. On the Section 8(b)(7)(C) charge, all parties stipulated that in lieu of a full hearing thereon, the record before Judge Kitchen consisting of testimony supported by briefs and oral arguments, be submitted to the Board for its decision. That record was also to be utilized and incorporated into the 10(k) hearing on the Section 8(b)(4)(D) charge. The hearing was held on June 2, 1972. The Board concluded that Section 8(b)(4)(D) was not applicable and quashed the Notice of Hearing. On November 6, 1972 Shell filed a Motion for Reconsideration and Order Reopening the Record, which was denied on January 15, 1973. The Union's motion for Summary Judgment is based solely on the Board's decision in the jurisdictional dispute. In support thereof, the Union urges the application of *res judicata* to Shell's complaint for damages.

At the outset, it should be pointed out that there is no clear precedent requiring the application of *res judicata* to the administrative proceedings of the N.L. R.B. Conflict among the circuits which have considered the issue exists; two would apply the doctrine of *res judicata* and two would not.[7] Even those Circuits which recognize the applicability of the doctrine do not apply it *pro forma*. Its applicability is dependent upon the facts of each individual case and dependent upon whether the administrative agency was acting in a judicial capacity and whether the parties have had a full opportunity to present their version of the facts and to seek Court review of the Agency's findings. Painters District Council No. 38, etc. v. Edgewood Contracting Co., 416 F.2d 1081, 1083 (5th Cir. 1969). Perhaps the most expeditious analysis of this issue would be to focus upon the rationales employed by these courts, and to isolate any areas of disagreement.

Courts which have considered this issue since 1966 have relied upon United States v. Utah Construction Company,

---

6. 29 U.S.C. § 160(k):

"(k) Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(D) of section 158(b) of this title, the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed.

7. Circuit opinions which have supported the application of *res judicata* are Nix v. Fulton Lodge No. 2 of International Association of Machinists and Aerospace Workers, 452 F.2d 794 (5th Cir. 1971); H. L. Robertson & Associates, Inc. v. Plumbers Local Union No. 519, 429 F.2d 520 (5th Cir. 1970); Painters District Council No. 38 v. Edgewood Contracting Co., 416 F.2d 1081 (5th Cir. 1969); Paramount Transport Systems v. Chauffeurs, Teamsters Local 150, 436 F.2d 1064 (9th Cir. 1971). *Contra*: Old Dutch Farms, Inc. v. Milk Drivers Local 584, 359 F.2d 598 (2d Cir. 1966); Riverton Coal Company v. United Mine Workers of America, 453 F.2d 1035 (6th Cir. 1972).

384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966).[8] The Court stated at pp. 421–22, 86 S.Ct. at pp. 1559–1560:

> Occasionally courts have used language to the effect that *res judicata* principles do not apply to administrative proceedings, but such language is certainly too broad. When an administrative agency is acting in a judicial capacity and *resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,* the courts have not hesitated to apply *res judicata* to enforce repose. [Emphasis added.]

It may be deduced from the language of the Supreme Court that the facts of each case must be examined microscopically to determine whether the principle of *res judicata* is applicable. The necessity for close scrutiny was perhaps best articulated in Paramount Transport Systems v. Teamsters Local 150, 436 F.2d 1064 (9th Cir. 1971). In affirming a district court application of the doctrine the Court of Appeals, Ninth Circuit, stated at pp. 1065–66:

> We believe that the district court correctly applied United States v. Utah Construction & Mining Co., supra, to foreclose the union from litigating in this action those material issues of fact decided adversely to it in the proceedings culminating in a final order by the National Labor Relations Board. But we do not construe *Utah Construction* to require that the doctrine of collateral estoppel be applied across the board to all determinations of such issues by administrative agencies. Reading Utah Construction with United States v. Carlo Bianchi & Co., 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed. 2d 652 (1963), we conclude that collateral estoppel effect should be given only to those administrative determinations that have been made in a proceeding fully complying with the standards of procedural and substantive due process that attend a valid judgment by a court and further, that such effect should be accorded only to those findings upon material issues that are supported by substantial evidence on the administrative record as a whole.[9]

In this Court's determination of the effect to be given to a Section 10(k) hearing by a hearing officer on a jurisdictional dispute charge, a study of the legislative scheme would be helpful. The language of the cases, cited *supra,* dictates that the court must review the nature of administrative procedure in jurisdictional disputes. It should be emphasized that it varies, depending upon the type of each controversy. Jurisdictional and non-jurisdictional proceedings, therefore, must be distinguished.

Where non-jurisdictional cases are in dispute, the Board's determination is enforceable against the respondent in the appropriate United States Court of Appeals. Courts have ruled that an order of the N.L.R.B., based on a full hearing and merged in a court decree is *res judicata.*[10] Some circuits observe that the quasi-judicial character of non-juris-

8. Although it might be argued that Old Dutch Farms, Inc. v. Milk Drivers Local 584, 359 F.2d 598 (2d Cir. 1966) was decided before the decision of Utah Construction Company and should thus be excluded from *any* compilation of circuits, this argument does not hold much weight in light of Strip Clean Floor Refinishing v. New York District Council No. 9, 333 F.Supp. 385 (E.D.N.Y.1971) and Old Dutch Farms, Inc. v. Milk Drivers Local 584, 281 F.Supp. 971 (E.D.N.Y.1968). These Second Circuit cases decided after *Utah Construction Company* denied the application of *res judicata* and lend credence to that circuit's current opposi-

tion in any jurisdictional statistical analysis.

9. It should be noted that this case involved a Section 8(b)(4)(B) violation (secondary boycott) rather than a Section 8(b)(4)(D) violation (jurisdictional dispute), which confronts this court.

10. *See generally*: Nix v. Fulton Lodge No. 2 of International Association of Machinists and Aerospace Workers, 452 F.2d 794 (5th Cir. 1972) and Hyatt Chalet Motels, Inc. v. Salem Building and Construction Trades Council, 298 F.Supp. 699 (D.Or.1968). In both cases the court's decree was deemed essential to the application of the doctrine.

dictional hearings extends to Board determinations a status of finality which is appropriate for the application of *res judicata*.[11]

■ Section 10(k) hearings, unlike those involving nonjurisdictional disputes, do not possess any attributes of finality, and cannot be considered the equivalent of a court trial on the merits.[12] A jurisdictional dispute is initiated by the filing of a charge alleging the commission of an unfair labor practice. When that charge has been investigated by the Regional Director and found to have some validity, he may, in the exercise of his discretion, seek injunctive relief in the United States District Court pursuant to 10(*l*) of the Act, for a temporary restraint of the picketing (or other unlawful conduct) while the processes of the Board are afforded time to operate. Simultaneously with his findings, the Regional Director issues a Notice of Hearing to all parties involved in the dispute. Unless the parties notify the Director that they have resolved the dispute, or have agreed upon methods for its voluntary settlement, the parties must submit to a 10(k) hearing.[13]

The milieu of a Section 10(k) hearing is quite relevant when evaluating the potential application of *res judicata*. The hearing officer is a local Regional Office Agent. These agents, who may or may not be attorneys, investigate charges, sit as hearing officers in representation cases and conduct elections.[14] It is evident that they are not what may be called the Board's quasi-judicial arm, i. e., its independent staff of trial examiners or Administrative Judges who sit in non-jurisdictional unfair labor practice cases. The hearing officer's primary concern is an assurance that the record contains as full a statement of the perti-

nent facts as may be necessary for the N.L.R.B.'s determination. At the close of the hearing, the hearing officer prepares an analysis of the issues and the evidence, but makes no recommendations for the resolution of the dispute. This is promulgated in 29 C.F.R. 101.34 which states:

> Sec. 101.34 Hearing—If the parties have not adjusted the dispute or agreed upon methods of voluntary adjustment, a hearing, usually open to the public, is held before a hearing officer. *The hearing is nonadversary in character*, and the primary interest of the hearing officer is to insure that the record contains as full a statement of the pertinent facts as may be necessary for a determination of the issues by the Board. All parties are afforded full opportunity to present their respective positions and to produce evidence in support of their contentions. The parties are permitted to argue orally on the record before the hearing officer. At the close of the hearing, the case is transmitted to the Board for decision. *The hearing officer prepares an analysis of the issues and the evidence* but makes no recommendations in regard to resolution of the dispute.[15]

Upon transmission of the record to the Board, it "determines" the dispute and makes an affirmative award of the work in question to one or the other of the competing unions.

Although the issue involving Section 10(k) hearings and the subsequent application of *res judicata* has not been litigated or determined, it was anticipated in an article reported in 67 Mich.L.Rev. 824 (1969). While it is true, as stated by defendant, that the author of this case note favors the application of *res judicata* to administrative proceedings

11. *Supra* note 7.

12. *See* 29 C.F.R. §§ 101.31–.36, 102.89–.93 (1968).

13. 29 C.F.R. § 101.33 (1968).

14. *Compare:* 29 C.F.R. § 101.10 (1968) requires that an attorney conduct the hearing in unfair labor practice matters other than those involving jurisdictional disputes.

15. *Compare:* 29 C.F.R. § 101.10 (1968).

where appropriate, even this article distinguishes Section 10(k) proceedings from other unfair labor practice procedures before the Board.[16] It is that procedure which the defendant urges this court to characterize as a judicial proceeding, thereby precluding plaintiff from pursuing this action for damages. This, we cannot do.

 Nor was there any administrative disposition of the Section 8(b)(4)(B) charge, mentioned earlier in this opinion, which could possibly be equated with a judicial proceeding. This charge was entirely withdrawn from the Board's consideration during the course of its investigation. Thus, no Agency action or legal consideration at all was taken or given to the secondary boycott allegation. Section 8(b)(4), 29 U.S.C. § 158(b)(4), embraces not only jurisdictional disputes but unlawful secondary boycotts as well. Both issues are included and urged as bases for damages in Shell's challenged complaint. Redress in the United States District Court, pursuant to a Section 303 complaint in no way is dependent upon an Agency finding of an unfair labor practice; the exhaustion of administrative remedies is not a condition precedent for the maintenance of a subsequent damage suit. International Longshoreman's and Warehouseman's Union v. Juneau Spruce Corp., 342 U.S. 237, 243–244, 72 S.Ct. 235, 96 L.Ed. 275 (1952) and Taube Electrical Contractors v. International Brotherhood of Electrical Workers, 261 F.Supp. 664, 665–666 (S.D.Fla.1966).

The determination of this court is that there has been no judicial decree constituting estoppel; nor do the administrative proceedings possess a "judicial" character affording an adequate hasis for the application of *res judicata*. This is not to say that the doctrine can never be applied in unfair labor practice decisions. We need not reach that broad conclusion. Rather, the narrower issue is whether, in the circumstances of this case, *res judicata* is a bar to the plaintiff's cause of action. In our view, it is not.

Accordingly, the defendant-Union's motion for summary judgment will be dismissed.

Counsel may submit an appropriate order.

16. 67 Mich.L.Rev. 824, 828 n. 27, 832 n. 43. The main thrust of this article was that where Board procedures in unfair labor practice disputes constitute the equivalent of a plenary court trial, the principles of *res judicata* and collateral estoppel should be applied pursuant to the rationale stated in *Utah Construction Company, supra.*