**EAZOR EXPRESS, INC., Plaintiff,**

**v.**

**GENERAL TEAMSTERS LOCAL 326, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendant.**

**Civ. A. No. 4476.**

United States District Court,
D. Delaware.

Feb. 11, 1975.

Arthur J. Sullivan, of Morris, James, Hitchens & Williams, Wilmington, Del., for plaintiff; Martin R. Lentz, of Pelino, Wasserstrom, Chucas & Monteverde, Philadelphia, Pa., of counsel.

Francis S. Babiarz, of Biondi & Babiarz, Wilmington, Del., for defendant.

## OPINION

STAPLETON, District Judge.

 Plaintiff's amended complaint in this action seeks damages from the defendant labor union pursuant to section 303 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 187,[1] for activity allegedly in violation of section 8 (b)(4)(D) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(b) (4)(D).[2] Presently before the Court is plaintiff's motion for partial summary judgment on the issue of liability. The sole question presented concerns the effect to be given a prior Decision and Order of the National Labor Relations Board (the "Board") finding that the defendant did engage in the unfair labor practice alleged in the complaint. General Teamsters Local 326 (Eazor Express, Inc.), 208 NLRB No. 99 (1974), enforced by the Court of Appeals for this Circuit, General Teamsters Local 326 v. N.L.R.B., 505 F.2d 730 (3rd Cir. 1974). For the reasons which follow, I conclude that the doctrine of collateral estoppel precludes the relitigation here of the issues decided in the cited proceeding.

Plaintiff Eazor Express, Incorporated ("Eazor") is a trucking company whose operations include shipping auto parts from Chrysler's plant in Detroit to its assembly plant in Newark, Delaware. Eazor's drivers are members of Teamsters Locals 299 of Detroit and 377 of Youngstown, Ohio.

According to the findings of fact adopted by the Board, the Delaware Teamsters Local 326 established a picket line at the Newark plant on September 25, 1972, seeking to have its men assigned to work on Eazor's trucks there. Chrysler attempted to free itself of this intra-union dispute by establishing a separate gate for Eazor deliveries, but Local 326 continued to picket the main

1. Section 303 provides:
 (a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of this title.
 (b) Whoever shall be injured in his business or property by reason of any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit.

2. Section 8(b) provides in pertinent part:
 (b) It shall be an unfair labor practice for a labor organization or its agents—
 * * * * *
 (4)(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry

affecting commerce, where in either case an object thereof is—
 * * * * *
 (D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work:
 * * * * *
 Provided further, That for the purposes of this paragraph (4) only, nothing contained in such paragraph shall be construed to prohibit publicity, other than picketing, for the purpose of truthfully advising the public, including consumers and members of a labor organization, that a product or products are produced by an employer with whom the labor organization has a primary dispute and are distributed by another employer, as long as such publicity does not have an effect of inducing any individual employed by any person other than the primary employer in the course of his employment to refuse to pick up, deliver, or transport any goods, or not to perform any services, at the establishment of the employer engaged in such distribution . . . ..

gate, and brought the plant to within a few hours of shutting down. In order to stop the picketing, Chrysler then closed its gates to Eazor.

On October 6, Eazor filed unfair labor practice charges with the Board against Local 326, alleging violation of the "jurisdictional dispute" section, section 8(b) (4)(D) of the NLRA.[3] Pursuant to section 10(k) of that Act, 29 U.S.C. § 160(k),[4] a hearing was held on the merits of the jurisdictional dispute, and on May 31, 1973, the Board issued its "Decision and Determination of Dispute" finding that Local 326 was not entitled, through means proscribed by section 8(b)(4)(D), to force or require Eazor to assign this work to members of Local 326. 203 NLRB No. 154.

Local 326 refused to comply with the Board's award of the work, and, as a result, the Board issued an unfair labor practice complaint under section 10(b) of the NLRA, 29 U.S.C. § 160(b). The matter was heard before an Administrative Law Judge on September 10, 1973; on October 9, 1973, she issued a decision concluding that Local 326 had engaged in the unfair labor practices charged. Local 326 took Exceptions to her findings, but on January 23, 1974, the Board, acting pursuant to section 10(c), 29 U.S.C. § 160(c), affirmed her Decision and adopted her proposed Order as its own. General Teamsters Local 326 (Eazor Express, Inc.), *supra.*

Local 326 then petitioned the Court of Appeals to review and set aside the Board's Order. The Board filed a cross-application for its enforcement, and Eazor was granted leave to intervene. On October 22, 1974, the Third Circuit entered a Judgment Order denying Local 326's Petition and enforcing the Board's Order. General Teamsters Local 326 v. N.L.R.B., *supra.*

This action was filed on October 3, 1972, but was not actively prosecuted by plaintiff while matters were pending before the Board.[5] In June, 1974, it was stayed by Order of the Court, pending the Court of Appeals' decision.

In United States v. Utah Construction & Mining Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), the Supreme Court gave the green light to the application of the principles of *res judicata* and collateral estoppel to administrative decisions. The Court said:

> When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose.

Id., at 422, 86 S.Ct. at 1560. Following this lead, the Courts of Appeals for three Circuits, in cases virtually identical to the instant case, have held Labor Board unfair labor practice findings binding in later suits for damages under section

---

3. See note 2, *supra.* Eazor also charged a violation of the "secondary boycott" section, § 8(b)(4)(B), but this charge was later settled and is not involved in this litigation. Pursuant to section 10(*l*) of the NLRA, 29 U.S.C. § 160(*l*), the Board's Regional Director petitioned this Court for injunctive relief on both charges, which was granted on November 10, 1972. Samoff v. General Teamsters Local 326, C.A. 4505 (D.Del.1972) (Wright, C. J.).

4. Section 10(k) provides:

 (k) Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(D) of section 158(b) of this title, the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have aris-

en, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed.

5. Neither party demanded a jury trial. The Court thus has no occasion to determine what the effect of such a demand would be in the circumstances of this case. Cf. Crane Co. v. American Standard, Inc., 490 F.2d 332, 339–43 (2nd Cir. 1973); Rachal v. Hill, 435 F.2d 59, 63 n. 5 (5th Cir. 1970), cert. denied, 403 U.S. 904, 91 S.Ct. 2203, 29 L. Ed.2d 680 (1971).

303. Painters District Council 38 v. Edgewood Contracting Co., 416 F.2d 1081 (5th Cir. 1969); Texaco, Inc. v. Operative Plasterers & Cement Masons Local 685, 472 F.2d 594 (5th Cir. 1973), cert. denied, 414 U.S. 1091, 94 S.Ct. 721, 38 L.Ed.2d 548 (1973); International Wire v. Local 38, 475 F.2d 1078 (6th Cir. 1973), cert. denied, 414 U.S. 867, 94 S. Ct. 63, 38 L.Ed.2d 86 (1973); Paramount Transport Systems v. Teamsters Local 150, 436 F.2d 1064 (9th Cir. 1971). No Court of Appeals has held to the contrary since *Utah Construction.*[6]

The proceedings in this case satisfied the standards outlined in *Utah Construction* and the cases that have followed it. As the charged party in the section 10 (b) proceeding, Local 326 had the right "to appear in person or otherwise and give testimony" before the Administrative Law Judge. The statute requires that such proceedings be, "so far as practicable . . . conducted in accordance with the rules of evidence applicable in the district courts of the

United States under the rules of civil procedure." The Board's decision must "state its findings of fact" and must be based on "the preponderance of" the evidence adduced; any person aggrieved may obtain direct review under section 10(f), 29 U.S.C. § 160(f), in the Court of Appeals, where the Board's findings of fact are conclusive only if supported by "substantial evidence on the record considered as a whole."

Local 326 appeared by counsel, argued its case, and presented such evidence as it desired.[7] The Administrative Law Judge's decision was careful and comprehensive, and supported by substantial evidence.[8] "[C]onsiderations of economy of judicial time and public policy favoring the establishment of certainty in legal relations,"—the bases of *res judicata* and collateral estoppel, see Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948)—appear properly applicable in these circumstances.[9]

---

**6.** Old Dutch Farms, Inc. v. Milk Drivers and Dairy Employees Local 584, 359 F.2d 598 (1966), cert. denied, 385 U.S. 832, 87 S.Ct. 71, 17 L.Ed.2d 67 (1966), cited by defendant, was decided on March 31, 1966. *Utah Construction* was handed down on June 6, 1966.

The apparently clear statement in Riverton Coal Co. v. United Mine Workers, 453 F.2d 1035, 1042 (6th Cir. 1972), that "We do not regard the decisions of the Board as controlling on us in damage actions under Section 303", must be read in context. The decisions it referred to were on questions of law (the legality of "Protective Wage Clauses") decided by the Board in a number of proceedings unrelated to the one before the Court. That the case is not inconsistent with the same Circuit's later holding in *International Wire, supra,* is supported by the fact that two of the three judges sitting on both cases were the same, and the later case did not disapprove the former.

**7.** The parties to the 10(b) proceedings stipulated that the evidentiary record would be limited to the record made in the 10(k) proceeding, plus the opinion of the Board in that matter and the opinion of this Court in the action for injunctive relief. The parties did, however, request the Administrative Law Judge to reopen the record and take further evidence in the event she should find

any issues of credibility that needed to be resolved. She found no such issues. Decision, at 2, n. 1.

**8.** This was either not challenged by the parties, or implicitly found by the Third Circuit in order to enforce the Board's Order.

**9.** The two doctrines are supported by the same rationale, but apply in different circumstances. As the Supreme Court has explained:

The general rule of *res judicata* applies to repetitious suits involving the same cause of action. . . .

But where the second cause of action between the same parties is upon a different cause or demand, the principle of *res judicata* is applied more narrowly. . . . In this sense, *res judicata* is usually and more accurately referred to as estoppel by judgment, or collateral estoppel.

Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597–98, 68 S.Ct. 715, 92 L.Ed. 898 (1948). See Hadge v. Second Federal Savings and Loan of Boston, 409 F.2d 1254 (1st Cir. 1969), Restatement, Judgments § 70. Since an unfair labor practice proceeding before the Board and a section 303 damage suit in district court are separate "causes of action," as the cases discussed below demonstrate, it is collateral estoppel which applies here.

Defendant argues, however, that there are special factors involved in the treatment of unfair labor practices under the labor laws that militate against application of collateral estoppel in these circumstances. Four district court cases that have arguably so held are cited in support. These cases are either distinguishable or not persuasive.

In the first, Tucci v. International Union of Operating Engineers, 316 F.Supp. 1127, 1129 (W.D.Pa.1970), the Court stated "We recognize that the N.L.R.B. proceeding is an independent proceeding and that the Board's findings are not res judicata in a suit under [section 303]." There was no discussion of this point and no citation of authority to support it. The Court went on to rest its decision on the uncontradicted evidence which had been adduced before the Board.

In Shell Chemical Co. v. Teamsters Local 676, 353 F.Supp. 480 (D.N.J.1973), Judge Cohen held that *res judicata* did not apply in a case where the plaintiff had not been a party to the only prior proceeding at which a record had been made, and where the board proceedings relied upon were held under section 10 (k) rather than sections 10(b) and (c). Those proceedings had thus been non-adversary and non-judicial in nature. Moreover, the judge specifically noted that he was *not* reaching the "broad conclusion" that "the doctrine can never be applied in unfair labor practice [i. e., § 10(c)] decisions." 353 F.Supp., at 485. In another decision seven months later, Judge Cohen re-emphasized the limited nature of his holding in *Shell Chemical Co.*, and noted that most authority favored the application of *res judicata* principles to Board findings. United Engineers and Constructors, Inc. v. International Brotherhood of Teamsters, 363 F.Supp. 845, 847 and n. 5 (D.N.J. 1973).

The third, and best-reasoned district court decision refusing to apply *res judicata* principles in a section 303 case is

that of Judge Mishler in Old Dutch Farms, Inc. v. Milk Drivers and Dairy Employees Local 584, 281 F.Supp. 971 (E.D.N.Y.1968). Accepting the guidance of *Utah Construction*, the judge noted that "Where there is some good reason for a new judicial inquiry into the same facts, however, the courts will not view the administrative findings as final. . . . The crucial issue [here], therefore, is whether there is some factor present either in the prior proceedings or the nature of an action under § 303 which militates against the application of the doctrine." Judge Mishler found such a factor in the "congressional scheme of parallel enforcement of section 8(b)(4) violations by the courts and the Board," citing International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp., 342 U.S. 237, 72 S.Ct. 235, 96 L.Ed. 275 (1952); N.L.R.B. v. Radio & Television Broadcast Engineers Union [the *CBS* case], 364 U.S. 573, 81 S.Ct. 330, 5 L.Ed.2d 302 (1964); Kipbea Baking Co. v. Strauss, 218 F.Supp. 696 (E.D.N.Y.1966); United Brick & Clay Workers v. Deena Artware, 198 F.2d 637 (6th Cir.), cert. denied, 344 U.S. 897, 73 S.Ct. 277, 97 L.Ed. 694 (1952); and N.L.R.B. v. Deena Artware, 198 F.2d 645 (6th Cir. 1952), cert. denied, 345 U.S. 906, 73 S.Ct. 644, 97 L.Ed. 1342 (1953).[10]

▮▮ I do not think these cases compel this conclusion. *Juneau Spruce* held that section 8(b)(4) proceedings before the N.L.R.B. and section 303 proceedings in court were "independent" in the sense that Board action was not prerequisite to court action, or, stated another way, that no requirement of exhaustion of administrative remedies was to be imposed on section 303 actions. This is not, as at least two other courts have observed, inconsistent with giving collateral estoppel effect to the first decision made. See Painters District Council 38 v. Edgewood Contracting Co., 416 F.2d 1081, 1085 (5th Cir. 1969); Hyatt Chalet Motels, Inc. v. Salem Building &

---

10. The judge also found "a substantial factual issue remain[ing] to be tried" in that case, a circumstance not present here.

Construction Trades Council, 298 F. Supp. 699, 702 (D.Or.1968). Indeed, collateral estoppel, as distinguished from *res judicata,* applies to situations where the cause of action in the prior suit is not the same as the one in the pending case, and thus will ordinarily be applied in such "independent" claim situations. See note 9, *supra.*

■ The *CBS* case is to the same effect. Relying on *Juneau Spruce,* the Court said "We do not require a 'substantive symmetry' between [§ 303 and § 10(k)]." But the Court explicitly noted that its recognition of the "separate and distinct nature" of these proceedings did not bear on the application of collateral estoppel between them, stating, "We need not and do not decide what effect a decision of the Board under § 10(k) might have on actions under [§ 303]." 364 U.S., at 585, 81 S.Ct., at 337.[11]

In N.L.R.B. v. Deena Artware, *supra,* and United Brick and Clay Workers v. Deena Artware, *supra,* both decided the same day, the Sixth Circuit upheld both a judgment for the plaintiff employer on a jury verdict in a section 303 suit, and an inconsistent Labor Board finding under section 10(c). This result, however, is not inconsistent with the applicability of principles of collateral estoppel.[12] Indeed, as previously noted, the Sixth Circuit gives collateral estoppel effect in section 303 actions to Board findings. International Wire v. Local 38, *supra.* See also *Painters District Council 38, supra,* 416 F.2d, at 1084.[13]

Thus the cases relied upon in *Old Dutch Farms* do not persuade me that its conclusion, on this issue, was correct.

The fourth and last district court case rejecting the application of *res judicata* principles is Strip Clean Floor Refinishing and Painting Corp. v. District Council 9, 333 F.Supp. 385 (E.D.N.Y. 1971). That case relies entirely on the *Old Dutch Farms* decision and is unpersuasive for the same reasons.

In sum, the proceedings in this case met the standards of *Utah Construction.* There is simply no need to relitigate matters already determined in a fair proceeding. Collateral estoppel will be applied.

Based upon the facts found by the Board and the law approved by the Court of Appeals on review, summary judgment on the issue of liability will be granted.

Submit Order.

---

11. It should also be noted that the instant case deals with a Board decision under sections 10(b) and (c) rather than section 10(k). Section 10(b) and (c) proceedings are adversary and judicial in nature, while section 10(k) proceedings are much less so, and this distinction has provided a basis for refusing to be bound by determinations made under section 10(k). See Shell Chemical Co. v. Teamsters Local 676, 353 F.Supp. 480 (D.N.J.1973). Thus if the Court in the *CBS* case left open the possibility of section

303 suits being bound by section 10(k) determinations, the case for following section 10(c) decisions is even stronger.

12. It does not appear that the findings in the first proceeding were asserted by way of estoppel before the second tribunal while the matter was pending before it.

13. Kipbea Baking Co. v. Strauss, *supra,* which is also cited in *Old Dutch Farms,* adds nothing to *Juneau Spruce, supra,* and the *Deena Artware* cases.