**Perry COLLINS, Appellant,**

v.

**INDUSTRIAL BEARING AND TRANS-MISSION COMPANY, Respondent.**

**No. KCD 29649.**

Missouri Court of Appeals,
Kansas City District.

Dec. 27, 1978.

Arthur J. Kase, Joseph A. Cambiano, Rubins, Kase & Rubins, Inc., Kansas City, for appellant.

Kenneth O. Smith, Douglas H. Delsemme, Knipmeyer, McCann, Fish & Smith, Kansas City, for respondent.

Before SHANGLER, P. J., SWOFFORD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

The issue here relates to the vexing problem of preemption of state court jurisdiction by the National Labor Relations Act, 29 U.S.C.A. Sections 157 and 158 (now part of the Labor Management Relations Act, 1947). Plaintiff sought by his petition in the circuit court to recover damages because of defendant's alleged violation of the Missouri Service Letter Statute, Section 290.140, RSMo 1969. Defendant moved to dismiss on the ground of federal preemption, and the trial court sustained that motion. We reverse.

The facts according to plaintiff's petition are as follows. Plaintiff was an employee of the defendant corporation from April 29, 1968, until October 11, 1974. Toward the end of that period, a labor union commenced an organizational drive of defendant's employees, and plaintiff became active on behalf of the union. Defendant discharged plaintiff on October 11, 1974, and on December 12, 1974, he made a written request for a service letter. Defendant furnished a letter in which it stated that plaintiff's employment was terminated "because, in the opinion of management, you threatened a fellow employee with the loss of his job if he refused to vote for the union in a representation election pending at the time, thereby interfering with the business of the company." Plaintiff's petition alleges that the service letter does not truly state the cause for the discharge and that "the true reason for plaintiff's discharge was that the defendant learned that the plaintiff was involved in the organizational drive of the union and because as a senior warehouse employee he was in a good position to influence employee's [sic] opinions towards the union in the pre-election period." The petition prayed actual damages in the sum of $5,000 and $50,000 as punitive damages.

To this petition, defendant filed a motion to dismiss or in the alternative to stay proceedings. It alleged that on October 15, 1974, Teamsters Local Union No. 541 had filed a charge before the National Labor Relations Board alleging that defendant had violated Section 8(a)(1) and (3) of the National Labor Relations Act, as amended, by discharging plaintiff for alleged misconduct, when in fact he was engaged in union activities and that the discharge was for the purpose of discouraging membership in the union. The motion further alleged that this charge under Case No. 17–CA–6255, had been tried before an administrative law judge, who had ordered plaintiff's reinstatement and the payment to him of compensation for losses incurred by reason of the discharge; but that defendant had filed exceptions to said decision which were still pending before the National Labor Relations Board. Defendant further alleged in its motion that the subject matter of the state court law suit was the same as that presented in the Labor Board proceeding, that the Labor Board had exclusive jurisdiction, or that at least the state court should not grant any relief to plaintiff until such

time as he had exhausted his remedies before the administrative body. Accordingly, defendant moved the court to dismiss this action for want of jurisdiction or in the alternative to stay the court proceedings until the case before the Labor Board had been completed.

The trial court granted the first branch of the alternative relief asked by defendant and sustained the motion to dismiss pursuant to a finding, as a matter of law, that the court "has no jurisdiction over the subject matter of the case and that exclusive jurisdiction has been preempted federally and rests with the National Labor Relations Board and with appeals to the Federal Courts therefrom." Plaintiff appeals, charging that ruling as error.

The doctrine of federal preemption in the field of labor law has had a long and troubled history. The conflicts in this area have spawned many United States Supreme Court opinions, the most recent of which is *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978). The *Sears, Roebuck* opinion traces in considerable detail the development of the preemption doctrine over many decades and undertakes to summarize the law in this area. As stated in that opinion, the basic general guideline for deciphering the unexpressed intention of Congress regarding the permissible scope of state regulation of activity touching upon labor-management relations was set forth in *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959), where the court stated: "When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by Sec. 7 of the National Labor Relations Act, or constitute an unfair labor practice under Sec. 8, due regard for the federal enactment requires that state jurisdiction must yield." In formulating that rule, the *Garmon* opinion explains that "[i]n determining the extent to which state regulation must yield to subordinating federal authori-

ty, we have been concerned with delimiting areas of potential conflict; potential conflict of rules of law, of remedy, and of administration."

Plaintiff argues that this case does not come within the foregoing rule, because the activity sought to be regulated by Sec. 290.-140 is the issuance of a service letter, which is a matter distinct from the act of terminating employment and that this service letter statute "does not regulate labor disputes or any other practices protected or prohibited by the National Labor Relations Act." Defendant counters with the argument that the basic issue before both the Labor Board and the Circuit Court were the same—namely, what was the real reason for plaintiff's discharge? It argues that plaintiff cannot recover in the state court action except by showing that the true reason for his discharge was his union activity, and that this constituted the very same issue which the Labor Board was called upon to decide. Defendant concludes that this presents just exactly the type of potential conflict which the preemption doctrine is designed to prevent.

That debate is of only theoretical interest as far as the disposition of this case is concerned; for even assuming defendant's above argument to be correct and that this case falls within the general scope of the preemption concept, nevertheless the situation here is then immediately released from preemption by reason of falling within a well-recognized exception to the preemption general rule. *Garmon* clearly outlines, and *Sears, Roebuck* carries forward, not only the general rule for preemption, but also certain broad exceptions to that general rule. The exception of direct interest for present purposes was set forth in *Garmon* as follows:

"However, due regard for the presuppositions of our embracing federal system, including the principle of diffusion of power not as a matter of doctrinaire localism but as a promoter of democracy, has required us not to find withdrawal

from the States of power to regulate where the activity regulated was a merely peripheral concern of the Labor Management Relations Act. * * * [or] where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act."

See also the restatement of this same concept in *Farmer v. United Brotherhood of Carpenters and Joiners of America, Local 25,* 430 U.S. 290, 97 S.Ct. 1056, l.c. 1061, 51 L.Ed.2d 338 (1977).

The application by the Supreme Court of the foregoing exception most closely akin to the facts of the present case was *Linn v. United Plant Guard Workers of America, Local 114,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966). Linn, an assistant manager of Pinkerton's National Detective Agency, filed a common law action against a union, two of its officers and a Pinkerton employee, alleging that the defendants had circulated a defamatory statement about him in violation of state law. These statements were made as part of literature being distributed in the course of a labor dispute and might have been found by the Labor Board to be unfair labor practice by the union in violation of Sec. 8 of the N.L.R.A. Nevertheless, the Supreme Court refused to find that the common law action had been preempted. In explaining that ruling, the Supreme Court in *Farmer, supra,* expounded on *Linn* as follows:

"But a number of factors influenced the Court to depart from the *Garmon* rule. First, the Court noted that the underlying conduct—the intentional circulation of defamatory material known to be false—was not protected under the Act, 383 U.S., at 61, 86 S.Ct., at 662, and there was thus no risk that permitting the state cause of action to proceed would result in state regulation of conduct that Congress intended to protect. Second, the Court recognized that there was

' " 'an overriding state interest' " ' in protecting residents from malicious libels, and that this state interest was ' " 'deeply rooted in local feeling and responsibility.' " ' *Id.,* at 61, 62, 86 S.Ct., at 663. Third, the Court reasoned that there was little risk that the state cause of action would interfere with the effective administration of national labor policy. The Board's Sec. 8 unfair labor practice proceeding would focus only on whether the statements were misleading or coercive; whether the statements also were defamatory would be of no relevance to the Board's performance of its functions. *Id.,* at 63, 86 S.Ct., at 663. Moreover, the Board would lack authority to provide the defamed individual with damages or other relief. *Ibid.* Conversely, the state law action would be unconcerned with whether the statements were coercive or misleading in the labor context, and in any event the court would have power to award Linn relief only if the statements were defamatory. Taken together, these factors justified an exception to the preemption rule."

As in *Linn,* so also here, the underlying conduct by the employer—the giving of a false statement as to the reason for plaintiff's discharge—was not protected under the federal act. Also, as in *Linn,* there is "an overriding state interest" in requiring Missouri employers to give truthful service letters and this state interest is " 'deeply rooted in local feeling and responsibility.' " In this respect the Missouri Supreme Court in *State ex rel. Terminal R.R. Ass'n of St. Louis v. Hughes,* 350 Mo. 869, 169 S.W.2d 328, 330 (1943) stated that the historical reasons for the enactment of the service letter statute was "the prevention of injustice and oppression, which had become so great as to be a public evil, to large numbers of laboring people." Still further, as in *Linn,* there is little risk that the state cause of action will interfere with the effective administration of national labor policy. The Board's unfair labor practice proceeding focused only on whether plaintiff's dis-

charge was coercive in discouraging concerted labor activity; whether the reason for discharge given in the service letter was true or false would be of no relevancy to the Board's performance of its functions. Moreover, the Board would lack authority to provide plaintiff with damages or other relief with respect to the false service letter. Conversely, Missouri law would be unconcerned with whether the discharge was coercive in the labor context, and in any event the Missouri court would have power to award plaintiff relief only if the reasons for discharge stated in the service letter were false. Taken together, all of these factors, just as in *Linn,* justify an exception to the preemption rule.

There is still another important factor here yet to be considered. The discussion so far has been limited to the situation as it existed before the trial court. Since the ruling of the trial court and pending this appeal, a very significant change has occurred. During oral argument in this court, both parties agreed that the Labor Board proceeding, which was still in progress at the time this case was heard by the circuit court, has now fully terminated. The appeal from the administrative law judge was heard by a three-member panel of the Board and was affirmed on July 13, 1977. *Industrial Bearing & Transmission Co., Inc.* and *Teamsters Local Union No. 541,* 230 N.L.R.B. No. 141. That company, the defendant here, then filed a petition for review before the United States Court of Appeals for the Eighth Circuit and the Labor Board filed cross-application for enforcement of its order. On February 22, 1978, that court affirmed the Board decision and handed down its opinion granting enforcement of the Board's order. *Industrial Bearing & Transmission Co., Inc. v. National Labor Relations Board,* 570 F.2d 839 (8th Cir. 1978). That decision by the federal Court of Appeals is entitled to judicial notice by this court. *Knorp v. Thompson,* 352 Mo. 44, 175 S.W.2d 889, 894[4] (1943); *State v. Public Service Commission,* 365 Mo. 1032, 291 S.W.2d 95 (banc 1956); *George v. Time,*

*Inc.,* 259 App.Div. 324, 19 N.Y.S.2d 385 (1940); *Rodriguez v. State,* 78 Misc.2d 174, 355 N.Y.S.2d 912 (1974); *McRae v. Dodt,* 50 Ariz. 336, 72 P.2d 444 (1937).

Furthermore, the determination in the Labor Board proceedings, to which plaintiff was in privity, is now binding upon the defendant under the doctrine of collateral estoppel. *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966); *Eazor Express, Inc. v. General Teamsters Local 326,* 388 F.Supp. 1264 (D.C.Del.1975); *Bowen v. United States,* 570 F.2d 1311 (7th Cir. 1978). Since the Labor Board has found and the federal Court of Appeals has affirmed that plaintiff was discharged because of his union activity, that issue can no longer be contested by defendant in the present case and there no longer exists any possibility of conflicting rulings as between the Labor Board and the Missouri circuit court. In effect, defendant has now received the full benefit of what would have been accomplished by a stay of proceedings in the circuit court pending completion of the Labor Board matter, which was a form of alternative relief which defendant originally requested in the trial court.

We have not overlooked the requirements made in *Linn,* as a condition for permitting the state court action there to proceed free from the doctrine of preemption. In *Linn,* the Supreme Court limited the availability of a state libel action "to those instances in which the complainant can show that the defamatory statements were circulated with malice and caused him damage," thereby adopting by analogy the standard enunciated in *New York Times Company v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). We have concluded, however, that those requirements were peculiar to the libel action involved in *Linn* and have no application to the present case which is founded on a distinctly different type of liability created by a state statute. As the court pointed out in *Linn,* the alleged libel occurred as part of literature

distributed during an organizing campaign and the extent of the union's right in connection with this literature raised a serious question of free speech, which would suffer unconstitutional abridgement unless the state court could find that the false statements were distributed with knowledge of their falsity or with reckless disregard of whether they were true or false. Furthermore, the court in *Linn* called specific attention to the fact that "the law in many States presumes damages from the publication of certain statements characterized as actionable *per se*" and that there exists a "propensity of juries to award excessive damages for defamation." Those special characteristics of libel have not been shown to exist in a case to recover under the Missouri service letter statute, and the special conditions required in *Linn* therefore need not be duplicated in the present situation. It should be pointed out however that here, as in *Linn,* protection against harassment is afforded by the consideration that "[i]f the amount of damages awarded is excessive, it is the duty of the trial judge to require a remittitur or a new trial."

The judgment is reversed and the case remanded for further proceedings.

All concur.