SECO, INC.

v.

**LOCAL 135, LABORERS' INTERNA-
TIONAL UNION.**

Civ. A. No. 79–1752.

United States District Court,
E. D. Pennsylvania.

July 11, 1980.

John C. Wright, James G. Sheehan, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for plaintiff.

Richard H. Markowitz, Stephen C. Richman and Robert C. Cohen, Markowitz & Richman, Philadelphia, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

The plaintiff seeks damages under § 303(b) of the Labor Management Relations Act, 29 U.S.C. § 187(b), for losses resulting from an alleged jurisdictional dispute between two locals of the Laborers' International Union over work at the plaintiff's job-site. The defendant, one of the local unions, has moved for summary judgment arguing principally that the other union's disclaimer of the work conclusively establishes the nonexistence of a jurisdictional dispute. Because the defendant has failed to establish that a jurisdictional dispute never existed, I will deny the motion.

Accepting the plaintiff's version of the facts for purposes of this motion, it appears that the plaintiff (SECO or company) is a New Jersey salvage operator engaged in the business of dismantling industrial equipment. In 1978 SECO began a project at the old Alan Wood Steel Company in Conshohocken, Pennsylvania, employing members of Local 734, Laborers' International Union (New Jersey local) with which it had a collective bargaining agreement. In October of 1978, representatives of the defendant, Local 135, Laborers' International Union (Pennsylvania local), approached SECO's supervisor and members of the New Jersey local at the job-site. According to the supervisor, the representatives urged that SECO sign a collective bargaining agreement with the Pennsylvania local and hire its members. When this request was refused, members of the Pennsylvania local and other unions picketed the entrance to the site. The pickets succeeded in temporarily stopping work on the project but did not force a reassignment of the disputed work.

Several months later, on March 13, 1979, representatives of the Pennsylvania local returned to the job site with a different demand. This time they asked the members of the New Jersey local to transfer into the Pennsylvania local. That same day the company filed an unfair labor practice charge with the Regional Director of the National Labor Relations Board alleging jurisdictional picketing in violation of § 8(b)(4)(D) of the act.[1] On April 4, at the request of the Regional Director, Judge McGlynn of this court issued a preliminary injunction under § 10(1) of the Act enjoining further picketing. On April 11, the Regional Director issued notice of a § 10(k) hearing to determine which union had the better claim to the work.

Meanwhile, the two locals had resolved their differences. On April 11, and again in greater detail on April 26, the New Jersey local informed the Regional Director by telegram that it disclaimed any interest in the work at the Conshohocken site. The second telegram explained that: "Employees on said job who are members of Local 734 must transfer into Local 135 because under the union's constitution, Local 135 has jurisdiction over the work and should represent the employees engaged in such work." The constitution of the international union provides for transfer on demand of the host local after a grace period of 30 days. *See* Constitution of the Laborers' International Union of North America, Article XX, § 9 (1976).

Relying upon the disclaimer, the Regional Director immediately quashed notice of the § 10(k) hearing and informed the company by letter that since a jurisdictional dispute "no longer exist[ed]" the § 8(b)(4)(D) charge would be dismissed. The company's appeal from these actions was denied by the General Counsel on July 11, 1979. Shortly thereafter the complaint in this action was filed.[2]

---

1. Subject to certain provisos, 8(b)(4)(D) makes it an unfair labor practice for a labor organization to engage in coercive conduct with an object of forcing an employer "to assign particular work to employees in a particular labor organization . . . rather than to employees in another labor organization . . . ." 29 U.S.C. § 158(b)(4)(D).

2. The original complaint included the New Jersey local as a party defendant, asserting liability based on breach of the collective bargaining agreement. SECO has since dismissed its claim against the New Jersey local under Fed. R.Civ.P. 41(a)(1).

Defendant's first contention is that because the New Jersey local disclaimed the work, no jurisdictional dispute ever existed. There are two alternative versions of this argument. One is that the Board's decision, premised upon the disclaimer, to terminate proceedings estops SECO to relitigate the existence of a jurisdictional dispute in this action. Alternatively, the defendant argues that the disclaimer itself dispels any question of rivalry between the two locals and therefore negatives a jurisdictional dispute. Both versions fail for the reason that they can, at most, only create a factual issue as to whether the disclaimer, either as interpreted by the Board or standing alone, had any retroactive effect.

■■■ It is no longer controversial that parties to an unfair labor practice proceeding may be estopped to relitigate issues finally determined therein in a later § 303(b) action. *See, e. g., Eazor Express, Inc. v. General Teamsters Local 326,* 388 F.Supp. 1264, 1266–67 (D.Del.1975). Whether similar preclusive effect should be given an order to quash notice of a § 10(k) hearing is another question. In *Shell Chemical Co. v. Teamsters Local 676,* 353 F.Supp. 480 (D.N.J.1973) the court held that an order to quash is not entitled to collateral estoppel effect due to the non-judicial character of § 10(k) proceedings. *See also* Note, *The Applicability of Res Judicata and Collateral Estoppel to Actions Brought Under § 8(b)(4) of the National Labor Relations Act,* 67 Mich.L.Rev. 824, 828 n.27, 832 n.43 (1969). Given the uncertain right of appeal from such orders[3] and the non-adversarial, preliminary character of the determination, I too decline to give the order to quash any preclusive effect. *See* Leslie, *The Role of the NLRB and the Courts in Resolving Union Jurisdictional Disputes,* 75 Colum.L.Rev. 1470, 1510–12 (1975).

Similar considerations argue against according any collateral estoppel effect to the Board's decision to discontinue the § 8(b)(4)(D) proceeding. Nevertheless, the

defendant maintains that the language of the Regional Director's letter evinces a disposition on the merits. But even assuming collateral estoppel applies, it cannot help the defendant because the preclusive effect argued for extends beyond the issue determined administratively.

The defendant attempts to expand the preclusive effect of the Regional Director's decision by interpreting it to mean that a jurisdictional dispute *never* existed. But the language of the Regional Director's letter discontinuing further proceedings is unmistakably prospective. The letter states that because a jurisdictional dispute *"no longer* exists," *"further"* proceedings are not warranted. This determination mooted the prospective injunctive relief available in a Board proceeding. It says nothing, however, about the possibility of a prior violation for which damages could be assessed in a § 303 action. Clearly, then, SECO's suit is not barred by collateral estoppel.

■■■ The other version of defendant's argument, based on the disclaimer itself, also stumbles on retroactivity. Neither of the two disclaiming telegrams purports to have any retroactive effect. The defendant offers no reason to limit its liability to the period after the disclaimer, and it is settled law that a union may accrue damage liability for jurisdictional picketing during the time before the Board acts. *International Longshoremen's and Warehouseman's Union v. Juneau Spruce Corp.,* 342 U.S. 237, 72 S.Ct. 235, 96 L.Ed. 275 (1952). Accordingly, there is at best a factual issue whether the disclaimer should relieve the defendant from liability.

■■■ The second ground of the defendant's motion is that the union's motivation for picketing was something other than to force SECO to assign the work to its members. The defendant makes the novel argument that because the two unions involved are locals affiliated with the same international union, there could not be a jurisdic-

---

**3.** *Compare Shell Chemical Co. v. NLRB,* 495 F.2d 1116 (5th Cir. 1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 449 (1975) (quash order not reviewable) *with Waterway Terminals Co. v. NLRB,* 467 F.2d 1011 (9th Cir. 1972) (quash order reviewable).

tional dispute between them. As a definitional matter, the argument lacks merit. *See* 29 U.S.C. § 152(5) (defining labor organization). As a matter of policy, it may well be that a territorial dispute between two affiliates has less adverse effect on an employer than a dispute between non-affiliated labor organizations. The purpose of § 8(b)(4)(D) is not to guarantee the employer freedom of choice but to save him from having to choose between two competing unions, either of which will strike if the other gets the work—a choice " 'between the devil and the deep blue.' " *NLRB v. Radio & Television Broadcast Eng'rs, Local 1212,* 364 U.S. 573, 575, 81 S.Ct. 330, 332, 5 L.Ed.2d 302 (1961). Where one local merely appeals to the other to honor the territorial limits of its charter, the employer is not so besieged. Here again, however, the defendant's argument only raises a factual issue because SECO asserts by affidavit that the defendant originally demanded that the *employer* assign it the work.

Resolution of a suit such as this one seems singularly inappropriate for summary judgment. In a thoughtful article on the relationship between judicial and administrative enforcement of § 8(b)(4)(D), Professor Leslie points out that a union's liability often will depend on which part of § 8(b)(4) is chosen to apply to its conduct. That crucial initial characterization is determined by assumptions about the union's motivation, and whether those assumptions are borne out by the facts is usually the decisive issue in a case. For example, otherwise unlawful picketing may be protected if the union's motive is preservation of its traditional work or representation of employees presently doing the work. *See* Leslie, *75 Colum.L.Rev.,* at 1471–80, 1487–88. The defendant hints at a representational defense when it describes the laborers employed by SECO as "a single group of employees with the only question being which local affiliate would receive the dues money." Defendant's Brief at 13. Such difficult questions of intent cannot be resolved on the basis of affidavits. The motion for summary judgment will be denied.