**ALLIED INTERNATIONAL, INC., Plaintiff,**

v.

**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL–CIO, et al., Defendants.**

Civ. A. No. 80–584–S.

United States District Court, D. Massachusetts.

Oct. 1, 1982.

Duane R. Batista, Danielle E. deBenedictis, Alan D. Rose, Nutter, McClennen & Fish, Boston, Mass., for plaintiff.

Thomas W. Gleason, New York City, Joseph T. Doyle, Condon & Doyle, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

SKINNER, District Judge.

Plaintiff Allied International, Inc. ("Allied") brings this action under section 303 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 187 against the International Longshoremen's Association (the "ILA") and its local unions for their refusal to unload ships engaged in trade with the U.S.S.R. Allied is an importer of wood products from the Soviet Union. Following a directive issued by ILA President Thomas Gleason on January 9, 1980, defendants commenced a nationwide boycott of Soviet goods in response to the Soviet invasion of Afghanistan and refused to unload the wood imported by the plaintiff. The boycott lasted into the spring of 1981. Plaintiff asserts that this conduct constitutes an illegal secondary boycott under § 8(b)(4)(B) of the National Labor Relations Act, 29 U.S.C. § 158(b)(4). Plaintiff has moved for a summary judgment with respect to the issue of liability and for a protective order to stay discovery until disposition of the summary judgment motion. For the reasons which follow, the motion for partial summary judgment is granted. The motion for a protective order is denied because the summary judgment motion is disposed of herewith.

The underlying facts of this case have been fully set forth in various opinions dealing with earlier phases of this litigation. *International Longshoremen's Association v. Allied International, Inc.*, 456 U.S. 212, 102 S.Ct. 1656, 72 L.Ed.2d 21 (1982); *Allied International, Inc. v. International Longshoremen's Association*, 640 F.2d 1368 (1st Cir.1981) and *Allied International, Inc. v. International Longshoremen's Association*, 492 F.Supp. 334 (D.Mass.1980). *See also, Walsh v. International Longshoremen's Association*, 630 F.2d 864 (1st Cir.1980); *Walsh v. International Longshoremen's Association*, 488 F.Supp. 524 (D.Mass.1980). For present purposes it is sufficient to outline the recent procedural history. On April 20, 1982, the United States Supreme Court held that Allied's complaint against the ILA stated a cause of action under § 8(b)(4)(B) of the National Labor Relations Act, 29 U.S.C. § 158(b)(4). This court had dismissed plaintiff's § 8(b)(4)(B) claim as insufficient as a matter of law. The Court of Appeals reversed this decision and the Supreme Court affirmed the holding of the Court of Appeals. During these proceedings, Allied also brought a complaint against the ILA before the National Labor Relations Board ("NLRB") alleging that the ILA's boycott of Soviet goods was an unfair labor practice in violation of § 8(b)(4)(B). The NLRB found in favor of Allied and issued a cease and desist order against the ILA. *International Longshoremen's Association and Allied International, Inc.*, 257 NLRB No. 151 (August 28, 1981).

In this motion for a summary judgment, plaintiff must prove that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Plaintiff has met both of these requirements.

Little dispute about material facts exists on the record of this case. From the affidavits submitted, it appears that the only real matter in dispute relevant to the issue of liability is the availability of nonunion labor to handle Allied's cargo. It is undisputed that the union refused to handle Russian goods nationwide in response to the January 9, 1980 directive from ILA President Gleason. It is also undisputed that these goods included wood products imported by Allied from the U.S.S.R.

**34**

■ The defendants are precluded from raising the one disputed issue by the prior binding adjudication of the NLRB. It is well settled that the factual findings of an Administrative Law Judge are entitled to collateral estoppel effect when the parties have had a full and fair opportunity to litigate before the agency. *United States v. Utah Construction Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1965). Indeed, there is ample authority for applying collateral estoppel to cases in this precise posture, i.e., where one party seeks a partial summary judgment in an action under § 303 and where the NLRB has previously decided whether the conduct in question constitutes an unfair labor practice under § 8(b)(4)(B). *International Wire v. Local 38, International Brotherhood of Electrical Workers,* 475 F.2d 1078 (6th Cir.1973), cert. den. 414 U.S. 867, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973), *Texaco, Inc. v. Operative Plasterers and Cement Masons International Union,* 472 F.2d 594 (5th Cir.1973), cert. den. 414 U.S. 1091, 94 S.Ct. 721, 38 L.Ed.2d 548 (1973), *Paramount Transport Systems v. Chauffeurs Teamsters & Helpers Local 150,* 436 F.2d 1064 (9th Cir.1971), *H.L. Robertson & Associates v. Plumbers Local Union No. 519,* 429 F.2d 520 (5th Cir.1970), *Jaden Electrical Co. v. International Brotherhood of Electrical Workers,* 508 F.Supp. 983 (D.N.J.1981). "It is no longer controversial that parties to an unfair labor practice proceeding may be estopped to relitigate issues finally determined therein in a later 303(b) action." *Seco, Inc. v. Local 135 Laborers International Union,* 494 F.Supp. 168, 170 (E.D.Pa. 1980).

The principles of collateral estoppel are clearly applicable to the present case. Both parties have had a full and fair opportunity to litigate the same factual issues before an Administrative Law Judge ("ALJ") and before the NLRB. Defendants have made no assertion to the contrary. Represented by counsel, both parties submitted briefs and participated in two days of hearings before the ALJ. The ALJ made detailed findings of facts, passing on the credibility of witnesses, and the ILA submitted exceptions to certain of the findings. After having "carefully examined the record," the NLRB adopted the ALJ's findings of fact in full. 257 NLRB No. 151 at 2. Although the NLRB disagreed with the ALJ on certain legal issues, this disagreement did not extend to the factual issues which were explicitly adopted. *Id.* The NLRB's decision was a final judgment. Although the defendants have appealed the decision to the Court of Appeals, it presently stands as a final judgment for purposes of collateral estoppel.[1] *Barnes v. Oody,* 514 F.Supp. 23 (E.D.Tenn.1981). *See also Taunton Gardens Co. v. Hills,* 557 F.2d 877, 879 n. 2 (1st Cir.1977); *Kurek v. Pleasure Driveway and Park District of Peoria, Illinois,* 557 F.2d 580, 595 (7th Cir.1977) *cert. den.* 439 U.S. 1090, 99 S.Ct. 873, 59 L.Ed.2d 57 (1979).

The NLRB decided all the factual questions material to the issue of whether the ILA violated § 8(b)(4)(B) including the question of the availability of nonunion labor to handle Allied's cargo. See 257 NLRB No. 151 at 30, 32–3, 35–6. It found that although an incomplete gang may be filled in with some nonunion men ("scalawags"), a trained, completely nonunion gang could not be hired to unload a vessel. 257 NLRB No. 151 at 5. ". . . [D]ue to their experience on the docks, scalawags refuse to work ships when the ILA engages in a work stoppage of any kind". *Id.*

Thus, by application of the doctrine of collateral estoppel, no material facts remain in dispute. The § 303 liability at issue in this case is established by proof of a violation of § 8(b)(4)(B), and the essential facts pertaining to § 8(b)(4)(B) liability have already been litigated.

Allied is also entitled to a summary judgment on the liability issue as a matter of law. *International Longshoremen's Association v. Allied International, Inc.,* 456 U.S. 212, 102 S.Ct. 1656, 72 L.Ed.2d 21 (1982). The Supreme Court stated that:

> I will consider whatever appropriate motions the parties may choose to make at that time.

---

1. If the Court of Appeals finds error with respect to the material facts found by the NLRB,

[t]he secondary boycott provisions in § 8(b)(4)(B) prohibit a union from inducing employees to refuse to handle goods with the object of forcing any person to cease doing business with any other person. By its terms the statutory prohibition applies to the undisputed facts of this case. *Id.* at 222, 102 S.Ct. at 1662.

The Court spelled out the elements of a § 8(b)(4) violation as follows: "Employees must be induced; they must be induced to engage in a strike or concerted refusal; an object must be to force or require their employer or another person to cease doing business with a third person." *Id.* at 222 n. 18, 102 S.Ct. at 1662 n. 18 quoting *Carpenters v. NLRB,* 357 U.S. 93, 98, 78 S.Ct. 1011, 1015, 2 L.Ed.2d 1186 (1958). The third requirement is satisfied where the foreseeable consequences of a purely secondary boycott can reasonably be expected to threaten neutral parties with ruin or substantial loss. *Id.* 456 U.S. at 223, 102 S.Ct. at 1663. Defendants' assertion that their intent was not, in fact, to cause a cessation of business is irrelevant. *See id.* at 222, 102 S.Ct. at 1662. Based on the facts found by the NLRB and the admissions made before this court, the three part test under § 8(b)(4) has been satisfied: Employees were induced—indeed they were ordered—to engage in a concerted refusal to handle Soviet cargo. And a foreseeable result of their action was to threaten neutral parties, including Allied, with substantial loss, since it was clearly foreseeable that nonunion labor would not be available to unload the cargo. *See* 257 NLRB No. 151 at 30, 32–3, 35–6.

■ Defendants contend that even if a violation of § 8(b)(4)(B) can be found, the motion for summary judgment must be denied because plaintiff must also show that the secondary boycott specifically caused it to suffer damage before it can recover under § 303. This contention is without merit because the summary judgment is limited to the issue of liability. Defendants will still have full opportunity to contest what, if any, damage was actually suffered by Allied as a result of defendants' illegal boycott. Courts routinely grant partial summary judgments on the issue of liability in § 303 actions upon the NLRB's determination of § 8(b)(4)(B) violations. *Texaco, Inc. v. Operative Plasterers and Cement Masons International Union, supra; Paramount Transport Systems v. Chauffeurs Teamsters & Helpers Local 150, supra; Jaden Electrical Co. v. International Brotherhood of Electrical Workers, supra. See also H.L. Robertson & Associates v. Plumbers Local Union No. 519, supra.* To relitigate all of the underlying facts because the single issue of damages remains unresolved would contravene the considerations of judicial efficiency which are central to the doctrine of collateral estoppel.

Defendants' final contention is that they should be entitled to litigate their defense that Allied's imports are the product of slave or forced labor within the meaning of § 307 of the Tariff Act of 1930, 19 U.S.C. § 1307. This assertion is wholly unsupported by documentation or affidavit. "[A] party cannot rest on the allegations in his (pleading) in opposition to a properly supported summary judgment motion made against him." *First National Bank of Arizona v. Cities Service Co., Inc.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). Fed.R.Civ.P. 56(e). *See also Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975) *cert. den.* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976). Indeed, in all of the proceedings in this case to date, defendants have contended and the President of the ILA has specifically asserted that the boycott was performed solely to redress the Soviet invasion of Afghanistan. *See, e.g.,* Directive of President Gleason, January 9, 1980, Complaint at 5–6; Affidavit of John Bowers, May 23, 1980, at 4.

Accordingly, plaintiff's motion for a partial summary judgment with respect to liability against defendants is ALLOWED. The motion for a protective order is DENIED as moot. Discovery will be limited to the issue of damages and is to be completed by January 31, 1983.

This case is set down for pre-trial conference on the issue of damages on February 15, 1983. The Clerk will forward to counsel

a copy of the standard pre-trial order together with copies of this order.